**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1603-22

ZULFIGAR[1] AHMED,

     Plaintiff-Appellant,

v.

AMERICAN SECURITY
INSURANCE COMPANY,

     Defendant-Respondent,

and

CITY OF PATERSON,

     Defendant.

_____

          Submitted April 23, 2024 – Decided May 13, 2024

          Before Judges Sumners and Perez Friscia.

          On appeal from the Superior Court of New Jersey, Law
          Division, Passaic County, Docket No. L-0261-21.

          Zulfiqar Ahmed, appellant pro se.

---

[1] As there were multiple spellings of plaintiff's first name, we adopt the spelling used in plaintiff's briefs.

Dentons US LLP, attorneys for the respondent (John Robert Vales and Erika M. Lopes-McLeman, on the brief).

PER CURIAM

Plaintiff Zulfiqar Ahmed appeals from the January 11, 2023 Law Division order granting defendant American Security Insurance Company summary judgment and dismissing plaintiff's amended complaint with prejudice. Following our review of the arguments presented on appeal, the record, and the applicable law, we reverse and remand.

I.

We view the following facts established in the summary judgment record in a light most favorable to plaintiff. See Friedman v. Martinez, 242 N.J. 449, 472 (2020). This insurance coverage dispute concerns the value and magnitude of property damage to plaintiff's owner-occupied two-story residential apartment house in Paterson.

On August 4, 2020, during a high-wind rainstorm, a tree limb and branches fell onto plaintiff's house damaging its roof, vinyl siding, concrete masonry wall, a window, and other property. Plaintiff's house was insured under a lender-placed hazard insurance policy with defendant. The policy provided $383,223 in liability coverage for "the dwelling" and up to ten percent of the

policy limit for "other structures." Personal property was excluded from coverage, along with "wear and tear" and certain specifically defined causes of "water damage." After a loss, the policy required plaintiff to "protect the property from further damage," "[m]ake reasonable and necessary repairs to protect the property," "[k]eep an accurate record of repair expenses," and "[c]ooperate . . . in the investigation of a claim."

On August 6, plaintiff filed an insurance coverage claim with defendant. In addition to the exterior damage, plaintiff specifically claimed rainwater leaked from the damaged roof and window to lower levels of the house causing water damage to the basement. Defendant's adjustor inspected the exterior of the property, taking limited pictures. Plaintiff provided an itemized invoice dated September 29 from Ortiz Construction memorializing payments made in the amount of $34,246 for the repairs performed. On September 30, defendant advised plaintiff it was preserving a "full [r]eservation of [r]ights" pending "full access to the property for a complete inspection." In October, plaintiff requested payment for an exterior gutter, house trimming, a door, a step railing, the roof, and vinyl siding. Defendant advised plaintiff it was seeking complete access to both the exterior and interior of the property and would thereafter provide its adjuster's inspection report and repair estimate.

Plaintiff's counsel resubmitted the paid Ortiz Construction invoice and requested to discuss the matter upon defendant's review of the invoice and inspection report. Defendant's report estimated the net claim was $63,315.68 for the exterior and interior damage, caused by the tree limb's penetration of the roof requiring various replacements, including "the shingle and roofing felt as a whole." The report noted that "[a] significant number of interior repairs were completed prior to [the] inspection." Defendant disputed causation for certain of plaintiff's alleged property damage, attributing necessary repairs to prior insurance claims. A year earlier, plaintiff had settled five property damage claims with defendant, which were memorialized in a "confidential settlement agreement and release."

In December 2020, defendant notified plaintiff's counsel the claim adjustment was completed and payment for the net amount of $8,703.65 was being forwarded. Plaintiff acknowledged his counsel received a check for approximately $8,700, but allegedly instructed the check be returned as inadequate. Plaintiff maintained the total tree damage loss to his house and car was approximately $440,000.

On July 13, 2021, plaintiff filed an amended complaint asserting: breach of contract; negligent misrepresentation; declaratory judgment; specific performance; unjust enrichment; and bad faith. Defendant filed an answer.

In discovery, defendant produced an expert report by a forensic engineer averring most of the claimed interior damage was unrelated to the tree impact and was related to prior claims. The report provided a comparison of photos taken from the 2019 and 2020 insurance claims respectively, demonstrating similarity in property damage. While the report acknowledged the exterior damage plaintiff alleged, it noted there was "historical and overlapping damage." Plaintiff conversely produced multiple receipts, including additional paid invoices from Ortiz Construction and MK Construction. After the close of discovery, defendant moved for summary judgment. Plaintiff, self-represented, filed multiple opposition documents with the motion judge.

On January 11, 2023, after argument, the judge granted defendant's motion and issued an oral decision. The judge stated he was "absolutely satisfied that all of th[e] other damage and . . . conditions set forth in th[e] photographs were not casually related to the tree in the back elevation of th[e] house" and "nothing . . . indicate[d] . . . any causation between the tree damage in the rear elevation, the back elevation of the house[,] and all of these . . .

A-1603-22

photographs show[ing] work done on . . . bedrooms, kitchens, basements, front steps, et cetera." The judge further reasoned he was "firmly of the opinion that this could only be resolved in one way . . . for summary judgment in favor of . . . [defendant], that [plaintiff] was paid over $8,000 for the damage that was caused by the tree."

On appeal, plaintiff raised two arguments which solely address the dismissal of his breach of contract claim:[2]

> I. THE TRIAL COURT ERRED IN GRANTING [THE] MOTION FOR SUMMARY JUDGMENT TO DEFENDANT[] BECAUSE DEFENDANT[] BREACHED [ITS] INSURANCE POLICY TO PLAINTIFF'S PROPERTY LOSS.
>
> II. DEFENDANT'S POLICY STATES IF PROPERTY IS DAMAGED, EXPENSES WILL BE GIVEN TO REPAIR PROPERTY VIA PLAINTIFF'S PROPERTY INSURANCE POLICY.

## II.

We review a trial court's summary judgment decision de novo, "applying the same standard used by the trial court" under Rule 4:46-2(c). Samolyk v. Berthe, 251 N.J. 73, 78 (2022). "The court's function is not 'to weigh the

---

[2] We limit our discussion to the arguments raised by plaintiff on appeal. Issues not briefed on appeal are deemed waived. Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024); In re Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 180 (App. Div. 2021), certif. denied, 251 N.J. 380 (2022).

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). To rule on summary judgment, courts must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)).

"A dispute of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)). "Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alteration in original) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529). "Summary

judgment should be granted 'if the discovery and any affidavits "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."'" DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180-81 (2024) (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 405 (2013)). Insubstantial arguments based on assumptions or speculation are not enough to overcome summary judgment. Brill, 142 N.J. at 529; see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) ("'[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome' a motion for summary judgment." (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005))).

"A contract arises from offer and acceptance and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting Borough of W. Caldwell v. Borough of Caldwell, 26 N.J. 9, 24-25 (1958)). "Courts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Caruso v. Ravenswood Devs., Inc., 337 N.J. Super. 499, 506 (App. Div. 2001)). "The interpretation of a contract is generally subject to

de novo review." Arbus, Maybruch & Goode, LLC v. Cohen, 475 N.J. Super. 509, 515 (App. Div. 2023).

"In interpreting insurance contracts, we first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022) (quoting Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008)). "If the plain language of the policy is unambiguous, we will 'not "engage in a strained construction to support the imposition of liability" or write a better policy for the insured than the one purchased.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). "In a dispute over the interpretation of an insurance contract, it is the insured's burden 'to bring the claim within the basic terms of the policy.'" Rosario by Rosario v. Haywood, 351 N.J. Super. 521, 529-30 (App. Div. 2002) (quoting Reliance Ins. Co. v. Armstrong World Indus., Inc., 292 N.J. Super. 365, 377 (App. Div. 1996)). However, "where the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim." Id. at 530.

III.

Plaintiff argues summary judgment was erroneously granted because he sufficiently demonstrated defendant breached the policy by failing to reimburse his proven property damage and the cost of repairs. He further argues the matter should be submitted to a jury as he has demonstrated the damage caused from the tree limb through receipts, invoices, photographs, and his deposition testimony. It is undisputed plaintiff provided photographs depicting alleged damage to the house's roof, vinyl siding, concrete masonry wall, and a window caused by the fallen tree limb. Defendant's property adjuster's photographs similarly demonstrated property damage. In fact, although defendant's engineering expert largely disputed plaintiff's interior damage was causally related to the tree's impact, he acknowledged the "punctured roof and windows provide[d] openings for rainwater to penetrate the living space" and "the displaced tree limb and branches impacted the house's south elevation, south-facing roof slope, and the [concrete masonry] wall."

Notably, plaintiff provided an invoice from Ortiz Construction delineating the costs for repairs causally related to the tree limb and acknowledging payment of $34,246. The Ortiz invoice listed thirteen items repaired due to "damage caused by trees" and described the work performed. In framing the summary

10

judgment issue as "whether or not all of these repairs [we]re attributable to the tree damage in the rear elevation of the property," the judge failed to address the material issues of fact regarding the cost for certain necessary repairs that were largely undisputed. Although defendant's property adjuster's estimate was $13,845.78, with a net amount of $8,703.65 after depreciation, that does not negate plaintiff's evidence created disputed material issues of fact regarding what damage was causally related and the repair costs.

Thus, we part ways with the judge's determination that summary judgment was warranted because plaintiff failed to submit an expert report and "[t]here [wa]s nothing before the [c]ourt that would in any way, shape, or form" support all the damage claimed. Plaintiff was not required at the summary judgment stage to make a prima facie showing as to all damages claimed or be foreclosed from proceeding on any portion demonstrated. The judge did not address plaintiff's Ortiz Construction invoice reflecting plaintiff's payment for delineated work completed between August and September 2020. Providing plaintiff with all legitimate inferences from the record, we conclude the construction company invoices sufficiently demonstrated a prima facie showing of disputed facts regarding property damage causally related to the fallen tree limb precluding summary judgment. See Branch v. Cream-O-Land Dairy, 244

11

N.J. 567, 582 (2021). Therefore, we agree granting summary judgment dismissing plaintiff's contract claim was in error.

We note "[i]n general, expert testimony is needed where the factfinder would not be expected to have sufficient knowledge or experience and would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001). "A witness must be shown to have certain skills, knowledge or training in a technical area in order to be qualified to give expert testimony." Ibid. (citing N.J.R.E. 702). We do not suggest on the record before us whether plaintiff's proffered contractors shall be qualified as experts or the ultimate result, but conclude plaintiff made a sufficient prima facie showing.

Further, while the judge found plaintiff "was paid over $8,000 for the damage," plaintiff refuted he accepted the amount, and the record does not demonstrate otherwise. Defendant's December 2020 letter noticed payment for the claim was sent, but plaintiff maintained he advised counsel to return the check. Thus, whether plaintiff accepted payment is also in dispute.

Finally, we briefly address plaintiff's argument that he is entitled to reimbursement for all damages requested under the policy and defendant's position that plaintiff is precluded from seeking reimbursement for damages

stemming from his five previously settled insurance claims. Pursuant to the policy, plaintiff is only entitled to payment for the "reasonable cost[s] incurred" to replace "the damaged or destroyed property" from a covered "cause of loss." Thus, the policy precludes from recovery any unrepaired property damage from previously settled claims, unrelated damage from other causes, or unsupported costs allegedly related to this tree damage claim. For these reasons, based on our de novo review, we discern material issues of fact exist precluding summary judgment.

To the extent not addressed, plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION